## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. GROSS, | ) | FILED: JUNE 27, 2008 |
| | ) | 08CV 3686 |
| Plaintiffs, | ) | JUDGE KENDALL |
| | ) | MAGISTRATE JUDGE NOLAN |
| v. | ) | EDA |
| | ) | |
| RUSH HOUR EVENTS, LLC, f//k/a RUSH HOUR | ) | No. |
| MARKETING, LLC; ROBERT E. HOVEY, JR., | ) | |
| individually and as member of RUSH HOUR | ) | |
| EVENTS, LLC;  JAMES F. DAVIS, II, individually | ) | |
| and as member of RUSH HOUR EVENTS, LLC; | ) | |
| DAVID J. BOTTNER, individually and as member | ) | |
| RUSH HOUR EVENTS, LLC; and ROBERT | ) | JURY TRIAL DEMANDED |
| MONCADA, individually and as member of | ) | |
| RUSH HOUR EVENTS, LLC, | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

NOW COMES the plaintiff, WILLIAM J. GROSS, by and through his attorney,

RICHARD S. ZACHARY, and complaining of the defendants, ROBERT E. HOVEY, JR.,

JAMES F. DAVIS, II, DAVID J. BOTTNER, ROBERTO MONCADA, and RUSH HOUR

EVENTS, LLC (hereinafter, collectively, "defendants") state as follows:

### Jurisdiction and Venue

1.     This Court has jurisdiction pursuant to diversity of the parties, as set forth in 28

U.S.C. § 1332.

2.     Venue is proper in the Northern District of Illinois, under 28 U.S.C. § 1391(b), for

the reasons that (i) the acts complained of by the plaintiff took place in this district; (ii) the

defendant Rush Hour Events, LLC is located in this district; and (iii) on information and belief,

defendants Robert  E. Hovey Jr. and James F. Davis, II reside and do business in this district.

**Parties**

3.      Defendant RUSH HOUR EVENTS, LLC  is a limited liability corporation,

registered and licensed to do business in the Northern District of the State of Illinois.

4.      Defendant ROBERT E. HOVEY, JR. ("Hovey") is a member and owner of Rush

Hour Events, and a resident of the Northern District of Illinois.

5.      Defendant JAMES F. DAVIS, II  ("Davis") is a member and owner of Rush Hour

Events, and a resident of the Northern District of Illinois.

6.      Defendant DAVID J. BOTTNER ("Bottner") is a member and owner of Rush

Hour Events, and a resident of the State of Louisiana.

7.      Defendant ROBERTO MONCADA ("Moncada") is a member and owner of Rush

Hour Events, and a resident of the State of Louisiana.

8.      Plaintiff WILLIAM J. GROSS ("Gross") is a resident of the State of Florida.

**ALLEGATIONS COMMON TO ALL COUNTS**

9.      In or about January of 2006, the defendants Hovey, Davis, Bottner and Moncada

planned and organized a business entity, which was intended to facilitate, promote and manage

staffed sales events (hereinafter "Staffed Sales Events") at automobile dealerships located

throughout the country.

10.      In or about March of 2006, the defendants incorporated this business as Rush

Hour Marketing, LLC.  In or about March of 2007, Rush Hour Marketing, LLC was renamed as

Rush Hour Events, LLC.

11.      At all times relevant herein, on information and belief, the aforementioned

business entity (hereinafter "Rush Hour Events, LLC" or the "company") was owned, managed,

2

overseen, and controlled by the defendants Hovey, Davis, Bottner and Moncada.

12.     At all times relevant herein, Rush Hour Events, LLC operated its business from an office in Chicago, Illinois; and specialized in the promotion, marketing, and management of Staffed Sales Events at automobile dealerships throughout the country.  In return for handling the details of a Staffed Sales Event – usually extending for several days – Rush Hour Events, LLC received a substantial percentage of the gross receipts received by the dealership during the event.

13.     At all times relevant herein, Rush Hour Events, LLC employed a number of salespeople, on a full-time basis, to negotiate and effectuate the Staffed Sales Events, and to deal with its customers and clients.

14.     At all times relevant herein, the salespeople employed by Rush Hour Events, LLC worked out of the company's headquarters in Chicago, Illinois, pursuant to a contract of employment; and occupied a dependent economic relationship in regard to their employers Hovey, Davis, Bottner and Moncada.

15.     At all times relevant herein, on information and belief, the defendants Hovey, Davis, Bottner and Moncada each exercised managerial or supervisory authority over the company's affairs.

16.     At all times relevant herein, on information and belief, the defendants Hovey, Davis, Bottner and Moncada were all involved in, or otherwise aware of, the levels of compensation of the company's salespeople, inclusive of any deductions, withholdings, or diversions of the same.

3

17.    At all times relevant herein, the salespeople employed by Rush Hour Events, LLC were subject to the control and direction of the defendants; and performed services for Rush Hour Events, LLC within the usual course of business for a company in such field.

18.    On or about July 6, 2006, the defendants, through Hovey and Davis, offered the plaintiff a position as a salesman with Rush Hour Events, LLC.  The defendants explained that the position would require plaintiff to contact automobile dealerships, across the country, which had not previously done business with Rush Hour Events, LLC, and to convince their owners or managers to run a Staffed Sales Event through the company.  The defendants thereupon made an offer of employment to plaintiff, promising that plaintiff would receive the following compensation (hereinafter the "employment agreement") if he took the job:

(a)    A seven percent (7 %) commission on the gross receipts to Rush Hour LLC of the first Staffed Sales Event at a dealership which the plaintiff had procured as a customer, payable upon the company's receipt of its share of the proceeds of the aforesaid event (hereinafter "regular commissions");

(b)    A seven percent (7%) commission on the gross receipts to Rush Hour, LLC of a Staffed Sales Event at any dealership which plaintiff was chiefly responsible for negotiating or otherwise facilitating, payable upon the company's receipt of its share of the proceeds of the aforesaid event (hereinafter also "regular commissions");

(c)    A seven percent (7%) commission on the gross receipts to Rush Hour Events, LLC of any subsequent Staffed Sales Event at a dealership which the plaintiff had procured as a customer, regardless of whether plaintiff personally handled the subsequent deals (hereinafter "continuing commissions");

(d)    An annual bonus, in an amount to be determined by the company's profits and/or plaintiff's productivity as a salesman.

4

19.     On receiving the defendants' offer of employment, plaintiff asked Hovey and Davis if the promise of continuing commissions [set forth at 18(c)] would depend upon his continued involvement with such customer; or, on the other hand, whether he was guaranteed a continuing commission, once he landed a customer who signed up for subsequent sales, even if another employee handled the subsequent event.  The defendants assured plaintiff that the original salesman was not obligated to handle any of the subsequent sales, since his continuing commissions were based on his having procured such customer for Rush Hour Events, LLC as a source of business.

20.     On or about July 6, 2006, the plaintiff accepted the foregoing employment offer from the defendants.  On or about July 10, 2006, plaintiff commenced full-time employment as a salesman with Rush Hour Events, LLC, working out of the company headquarters in Chicago, Illinois.

21.     In the course of his employment with Rush Hour Events, LLC, plaintiff fulfilled any and all conditions for complete performance of the contractual promises extended to him by the defendants prior to his commencement of employment.

22.     Moreover, shortly after commencing employment, plaintiff managed to convince some of the most established dealerships in the country to run a Staffed Sales Event through Rush Hour Events, LLC.  Plaintiff soon became one of the most proficient salesmen employed by the company.

23.     Plaintiff not only succeeded in procuring numerous dealerships, throughout the country, as first-time customers of Rush Hour Events, LLC – but the majority of said customers signed up for subsequent Staffed Sales Events, on a regular basis, with Rush Hour Events, LLC.

5

24.     After being hired in July of 2006, plaintiff worked as a salesman for Rush Hour Events, LLC for an initial period of approximately thirteen months, or until approximately August 15, 2007.  Plaintiff's performance as a salesman remained at a satisfactory (if not superb) level throughout his employment.

25.     As of December 15, 2006, the defendants had not yet paid plaintiff any portion of his continuing commissions due and payable, although at least two subsequent Staffed Sales Events had taken place at dealerships which plaintiff had procured for the company.  Cognizant that there was no deadline for the payment of his continuing commissions due, plaintiff accepted the defendants' promise that such compensation would be paid in full in the near future.

26.     Unbeknownst to the plaintiff, the defendants were not sincere in extending such promise to him.  On information and belief, the defendants had come to the joint and mutual realization that plaintiff was simply earning too much – in terms of his regular compensation, and in regard to his continuing commissions which were coming due – to countenance any likelihood of their ever paying him what was owed to him.

27.     On or about December 15, 2006 – as the result of plaintiff's unexpected success a demanding job – the defendants thus decided to disregard their contractual promises to him, in order to avoid the necessity of compensating plaintiff in the amounts which he had earned.  On information and belief, the defendants decided to undertake a course of action which would minimize the compensation which they could get away with paying him, while simultaneously placing plaintiff in a disadvantaged position, in the company environment, which presumably would deter him from demanding what was due and owing to him.  On information and belief, the defendants thereupon resolved to take the following measures against the plaintiff:

(a)    the reduction of plaintiff's compensation via the imposition of arbitrary or capricious "fines,"  which would be conveniently withheld from plaintiff's regular commission checks;

(b)    the perpetual "deferral" of payment of  plaintiff's continuing commissions, with no intention of ever paying the plaintiff a single penny of such commissions;

(c)    intentionally delaying the payment of plaintiff's regular commissions due and payable for any given pay period, simply to keep plaintiff in a state of anxiety as to whether he would receive any compensation whatsoever for two or more weeks at a time;

(d)    incessant upbraiding of plaintiff for "personal" failings, unfounded accusations of drug or alcohol abuse, calculated invasions and infringements of plaintiff's privacy, and similar measures intended to keep plaintiff in a defensive and intimidated state, not suited for making monetary demands of his employers.

28.    On information and belief, the defendants also formed a plan to convince the plaintiff's customers to relinquish their confidence in the plaintiff as a salesman, and to substitute themselves – in particular, Hovey and Davis – in the position of trust and confidence which the plaintiff had occupied.  On information and belief, the defendants undertook to achieve this goal by a series of slanderous and malicious remarks, which either Hovey or Davis would impart, on a convenient occasion, to the manager of the dealership in question, taking the opportunity to suggest that the customer ask for one of the partners when scheduling his next Staffed Sales Event.  By such means, on information and belief, the defendants intended to sequester such events from the plaintiff's awareness, and thus make it even more difficult for plaintiff to recover his continuing commissions due and payable.

29.    On or about December 18, 2006, plaintiff arrived at the workplace at approximately 9:08 a.m., having been delayed due to a late-arriving bus.  The defendants, in

furtherance of their plan as described above, fined plaintiff $500.00 for "being late," with said 'fine' to be deducted from his next regular commissions check.

30.     On or about January 26, 2007, in furtherance of their plan as described above, the defendants withheld a total of $5,300.00 in regular commissions due and payable to plaintiff, including every dollar he had earned from a Staffed Sales Event at Findlay Motors in Kingsman, Arizona.  On information and belief, Hovey and Davis undertook to "explain" their unlawful retention of such compensation by informing plaintiff that he was being "fined" $5,300.00 due to his purported intake of an alcoholic beverage during one of the evenings of the preceding week. When plaintiff reminded the defendants that he did not consume alcohol, Hovey and Davis stated that their "minds were made up" and that the issue was closed.

31.     On or about May 4, 2007, plaintiff awoke with a pronounced fever, and called in sick to his workplace.  Plaintiff had rarely if ever missed days at work for any reason.  In furtherance of their plan as described above, the defendants immediately fined plaintiff $500.00 for "being absent," with said 'fine' to be deducted from his next regular commissions check.

32.     On or about May 10, 2007, in furtherance of their plan as described above, defendants withheld a $3,300.00 bonus due and payable to the plaintiff. On information and belief, the defendants again purported to justify such unlawful retention of plaintiff's funds under the pretext of "fining" plaintiff for his alleged (and non-existent) alcohol assumption – which accusations were not only groundless, but would be an imposture even if plaintiff had indeed sipped an alcoholic beverage (or two) on his own time.

33.     On or about July 15, 2007, in furtherance of defendants' plan as described above, the defendant Davis communicated a false, malicious and slanderous statement to Dennis

Tressler ("Tressler"), the owner/manager of the Marburger Dodge dealership in Bristol, Tennessee. Plaintiff had signed Tressler up as a first-time customer of Rush Hour Events, LLC, and had thereafter handled a number of Staffed Sales Events for his dealership. On or about July 15, 2007, in the course of a telephone conversation, Davis stated to Tressler, substantially if not identically, as follows:

> "Dennis, you should be advised that Bill Gross is on cocaine. He's been using the stuff for months. The next time you call the office, just ask to speak to me or Robert, and we'll take care of everything you need."

34.    On or about July 27, 2007, in furtherance of their plan as described above, the defendants withheld $12,500.00 in regular commissions due and payable to the plaintiff – explaining to plaintiff, through Hovey, that this was another "fine," due to the defendants' suspicions that plaintiff had again imbibed a few alcoholic beverages during the preceding weeks.

35.    Between approximately January 1, 2007 and August 9, 2007, defendants continued to withhold regular commissions and bonuses due and payable to plaintiff, pursuant to their plan as described above. On information and belief, during the 2007 year, defendants withheld a total of at least $47,100.00 in regular commissions and earned bonuses due and payable to the plaintiff.

36.    Between approximately January 1, 2007 and August 9, 2007, on information and belief, defendants also continued to "postpone" the payment of plaintiff's continuing commissions, which were collecting rapidly as the number of recurring Staffed Sales Events at plaintiff's procured dealerships kept increasing. Resorting to Hovey and Davis as their spokespersons, on information and belief, defendants repeatedly told plaintiff, disingenuously,

9

that payment of his continuing commissions was being "postponed" for the time being, and plaintiff would be "paid in full," in regard to his continuing commissions due and payable for the duration of his employment, before the end of the current year.

37.    On or about August 9, 2007, in furtherance of defendants' plan as described above, the defendant Davis communicated a false, malicious and slanderous statement to Wil Vinson, the owner/manager of Empire Nissan in Wilkesboro, North Carolina.  Plaintiff had signed Vinson up as a first-time customer of Rush Hour Events, LLC, and had thereafter handled a number of Staffed Sales Events for his dealership.  On said date, in the course of a telephone conversation, Davis stated to Vinson, substantially if not identically, as follows:

> "Bill Gross is on cocaine.  We just learned what's been going on since he's been here.  I thank God that Robert and I were able to fix his mistakes."

38.    On or about August 15, 2007, on information and belief, the defendants decided that plaintiff had procured a sufficient number of return customers, to make the time ripe to terminate him from employment, and thus obviate any need to continue to interact with plaintiff on a daily basis.

39.    On or about August 15, 2007, the defendants terminated plaintiff from his employment with Rush Hour Events, LLC.

40.    As of August 15, 2007, the defendants had not paid to plaintiff any of the $22,100.00 in regular commissions due and payable, which they had withheld in the course of his employment as described above.

41.    As of August 15, 2007, the defendants had not paid to plaintiff any of his continuing commissions due and payable, which they had withheld in the course of his

employment as described above. On information and belief, the continuing commissions due and payable to plaintiff as of August 15, 2007 totaled in excess of $40,000.00.

42.    Moreover, as of August 15, 2007, defendants had not paid to plaintiff any of his regular commissions due and payable for the preceding two weeks, which on information and belief totaled approximately $3,000.00.

43.    On August 15, 2007, upon being informed that he was fired, plaintiff demanded, of the defendants, that they immediately turn over and pay to him (i) the regular commissions and earned bonuses which they had withheld in the course of his employment, as described above; (ii) his regular commissions due and payable for the preceding two weeks; and (iii) his continuing commissions due and payable over the course of his employment, as described above. Defendants informed plaintiff that he was entitled to no additional commissions whatsoever.

44.    Following plaintiff's termination from Rush Hour Events, LLC, on information and belief, the company continued to receive financial benefits from recurrent Staffed Sales Events at plaintiff's procured dealerships, resulting in additional continuing commissions due and payable to plaintiff. In furtherance of their plan as described above, defendants continued to withhold and refuse to pay such continuing commissions to the plaintiff.

45.    Between August 15, 2007 and approximately October 20, 2007, on information and belief, Rush Hour Events, LLC experienced a gradual decline in the number of ongoing Staffed Sales Events which its salespeople were able to negotiate and facilitate in the plaintiff's absence.

46.    On or about October 20, 2007, on information and belief, the company's continuing loss of business sufficed to persuade the defendants to attempt to re-hire the plaintiff,

and thus jump-start their faltering profits through the talents of a proven salesman.  On

information and belief, the defendants decided to offer plaintiff a weekly salary, in addition to

any and all compensation set forth in the employment agreement which they had assented to in

July of 2006.  If successful in enticing plaintiff to come to work for them again, on information

and belief, the defendants intended to keep plaintiff on staff only until such time that their

business was sufficiently rejuvenated – thus to permit them to flout their contractual promises to

plaintiff yet again, and to get rid of him, again, without any further compunction or obligation.

     47.     On or about November 1, 2007, on information and belief, the defendants

convinced plaintiff to return to work at Rush Hour Events, LLC for a guaranteed weekly salary of

$1,500.00, in addition to the regular and continuing commissions, and the bonuses, as set forth in

the employment described above.

     48.     During plaintiff's second period of employment, defendants gradually reverted

back to their previous mode of conduct, in regard to strategic and calculated withholdings of

regular commissions which plaintiff had earned.  On information and belief, between November

1, 2007 and December 15, 2007, defendants failed and refused to pay plaintiff his regular

commissions due and payable for at least five successful Staffed Sales Events which plaintiff

facilitated during said period.

     49.     As of December 15, 2007, the defendants had not paid to plaintiff any of the

regular commissions and bonuses due and payable, which they had withheld in the entire course

of his employment as described above.  On information and belief, at least $47,100.00 in regular

commissions and earned bonuses, due and payable to plaintiff during the 2007 year, had been

withheld by the defendants as of December 15, 2007.

50.    As of December 15, 2007, the defendants had not paid to plaintiff any of his continuing commissions due and payable, which they had withheld during the entire course of his employment as described above.  On information and belief, the continuing commissions due and payable to plaintiff as of December 15, 2007 were in excess of $70,000.00, and had been withheld in their totality by the defendants.

51.   On or about December 15, 2007, pursuant to their plan as described above, defendants terminated plaintiff yet again.

52.    On or about December 15, 2007, upon being informed that he was terminated, plaintiff demanded, of the defendants, that they immediately turn over and pay to him (i) the regular commissions due and payable which defendants had withheld in the course of his employment; (ii) his bonuses due and payable which defendants had withheld in the course of his employment; and (iii) his continuing commissions due and payable which defendants had withheld in the course of his employment.  Defendants informed plaintiff that he was entitled to no additional compensation whatsoever.

53.    On or about April 2, 2008, an ex-employee of Rush Hour Events, LLC named Nathan Stronge  – now employed by a similar company known as Next Level Marketing – called up the automobile dealer Dennis Tressler, in an attempt to solicit new business for Stronge's new employer Next Level Marketing, Inc.  On information and belief, Tressler accepted the call, and thereupon ascertained that Stronge had worked for Rush Hour Events, LLC while plaintiff had been working there.

54.    On information and belief, Tressler thereupon made certain telephonic statements about the plaintiff, to Stronge, which go far to demonstrate the lasting impact of the false,

13

malicious, and slanderous communication which Davis made to Tressler on July 15, 2007 [as described above].  Tressler proceeded to state to Stronge, substantially if not identically, as follows:

> "What's with Bill? I heard from Davis that he was doing cocaine.  Is Bill *still* on cocaine?"

55.    On or about May 9, 2008, the defendant Robert Hovey communicated a false, malicious and slanderous statement to the automobile dealers Harry Kirch ("Kirch") and Kenneth Ruhl ("Ruhl"), while in the course of a conference call with the two of them.  Kirch and Ruhl were co-owners of Commonwealth Ford in Richmond, Kentucky, and had both done business previously with plaintiff while employed by Rush Hour Events, LLC .  On said date, Hovey stated to Kirsch, substantially if not identically, as follows:

> "You don't want to do business with Bill Gross.  He was shooting heroin in the bathroom while he was working for us!"

56.    From the date of plaintiff's termination, to and through the current date, the defendants have failed and refused to release, turn over, or pay to plaintiff any of the approximate $47,100.00 in regular commissions due and payable, which the defendants withheld in the course of his employment as described above.  Plaintiff's demands for payment of such compensation due and owing have been ignored or rebuffed by the defendants.

57.    From the date of plaintiff's termination, to and through the current date, the defendants have failed and refused to release, turn over, or pay to plaintiff any of his continuing commissions due and payable, which the defendants had withheld in the course of his employment and thereafter.  On information and belief, plaintiff's continuing commissions due and payable are currently in excess of $100,000.00.  Plaintiff's demands for payment of such

14

compensation due and owing have been ignored or rebuffed by the defendants.

58.　　On information and belief, the defendants Hovey, Davis, Bottner and Moncada, were all involved in, or otherwise willfully approved and allowed, any and all of the foregoing actions by one or more of the defendants to the plaintiff's financial, professional, and personal detriment.

## <u>COUNT I</u>
### (Illinois Wage Payment and Collection Act)

1- 58.　The plaintiff re-alleges and adopts the foregoing paragraphs 1- 58 as and for paragraphs 1- 58 of Count I, as though fully set forth therein.

59.　　At all times during the plaintiff's employment as set forth above, the plaintiff was an "employee" of defendants Hovey, Davis, Bottner, Moncada, and Rush Hour Events, LLC within the meaning of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. ("Wage Payment and Collection Act").

60.　　At all times during plaintiff's employment as set forth above, the defendants Hovey, Davis, Bottner, Moncada and Rush Hour Events, LLC were each "employers" of the plaintiff within the meaning of the Wage Payment and Collection Act.

61.　　At all times during plaintiff's employment as set forth above, the plaintiff's commissions due and payable were "wages earned and due and owing" within the meaning of the Wage Payment and Collection Act.

62.　　At all times during plaintiff's employment as set forth above, the plaintiff's continuing commissions due and payable were "wages earned and due and owing" within the meaning of the Wage Payment and Collection Act.

63.     At all times as relevant to this Complaint, on information and belief, the defendants Hovey, Davis, Bottner and Moncada each knowingly or willfully aided or allowed the plaintiff's employers to violate the provisions of the Wage Payment and Collection Act.

65.     On June 23, 2008, plaintiff's counsel made a written demand of the defendants for payment of plaintiff's wages earned and due and owing, as defined under the Wage Payment and Collection Act.  In his demand letter, plaintiff's counsel asked for payment of a portion of the compensation which he was owed, without prejudice to his right to seek an award of his total wages earned and due and owing in a legal action.  Following service by regular and certified mail, no response to this letter, whether by letter, fax, phone or e-mail, was received by plaintiff's counsel for more than three (3) working days, leaving plaintiff no alterative but to bring this action.  A copy of plaintiff's demand letter of June 23, 2008 is attached hereto and incorporated herein as Exhibit "A."

66.     Pursuant to the Wage Collection and Payment Act, plaintiff is entitled to an award of his attorney's fees incurred in this proceeding.

67.     Pursuant to the Illinois Interest Act, 815 ILCS 205/2, plaintiff is entitled to five percent (5%) annual interest upon his total commissions due and payable, accruing as of the date that said commissions became due.

68.     Plaintiff also requests the assessment of prejudgment interest, as well as the costs of this action.

WHEREFORE, plaintiff, WILLIAM J. GROSS, requests the entry of judgment in his favor and against the defendants, ROBERT E. HOVEY, JR., JAMES F. DAVIS, II, DAVID J. BOTTNER, ROBERTO MONCADA, and RUSH HOUR EVENTS, LLC, jointly and severally,

as follows:

A.    For an award of his commissions due and payable, in an amount in excess of ONE

HUNDRED FORTY SEVEN THOUSAND ONE HUNDRED DOLLARS ($147,100.00), with

statutory interest to accrue thereupon;

B.    For the assessment of 5% interest upon his commissions due and payable,

calculated as of the date that said sums became due and payable;

C.    For prejudgment interest;

D.    For an award of his attorney's fees;

E.    For the costs of this proceeding.

## COUNT II
### (Breach of Contract )

1- 68.    The plaintiff re-alleges and adopts paragraphs 1- 68 of Count I as and for

paragraphs 1- 68 of Count II, as though fully set forth therein.

69.    On or about July 6, 2006, the defendants Hovey, Davis, Bottner, Moncada, and

Rush Hour Events, LLC offered plaintiff the position of a salesman, promising that plaintiff

would receive the following compensation if he took the job:

(a)    A seven percent (7 %) commission on the gross receipts to Rush
Hour LLC of the first Staffed Sales Event at a dealership which the
plaintiff had procured as a customer, payable upon the company's
receipt of its share of the proceeds of the aforesaid event;

(b)    A seven percent (7%) commission on the gross receipts to Rush
Hour, LLC of a Staffed Sales Event at any dealership which
plaintiff was chiefly responsible for negotiating or otherwise
facilitating, payable upon the company's receipt of its share of the
proceeds of the aforesaid event;

17

(c)    A seven percent (7%) commission on the gross receipts to Rush Hour Events, LLC of any subsequent Staffed Sales Event at a dealership which the plaintiff had procured as a customer, regardless of whether plaintiff personally handled the subsequent deals;

(d)    An annual bonus, in an amount to be determined by the company's profits and/or plaintiff's productivity as a salesman.

70.    On July 6, 2006, for consideration good and valuable, plaintiff accepted the defendants' offer of employment.  On or about July 10, 2006, plaintiff commenced employment for the defendants as a salesman.

71.    In the course of his employment for the defendants, plaintiff performed and fulfilled any and all contractual conditions, for full performance by the defendants of the contractual promises made to plaintiff prior to his commencing employment, and as an incentive for him to do so.

72.    On or about January 17, 2007, when the defendants fined plaintiff $500.00 for "being late," defendants were willfully refusing to pay commissions due and payable which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

73.    On or about January 26, 2007, when the defendants withheld $5,300.00 of commissions due and payable to plaintiff, defendants were willfully refusing to pay commissions due and payable which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

74.    On or about May 4, 2007, when the defendants withheld a $3,300.00 bonus due and payable to plaintiff, defendants were willfully refusing to pay a bonus due and payable which

plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

75.    On or about May 10, 2007, when the defendants fined plaintiff $500.00 for "being absent," defendants were willfully refusing to pay commissions due and payable which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

76.    On or about July 15, 2007, when the defendants withheld $12,500.00 in commissions due and payable to plaintiff, defendants were willfully refusing to pay commissions which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

77.    On or about August 15, 2007, when defendants refused to pay plaintiff the regular commissions of approximately $3,000 which he had earned during the preceding two weeks, defendants were willfully refusing to pay commissions due and payable which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

78.    On or about August 15, 2007, when the defendants refused to pay to plaintiff his regular and continuing commissions, and bonuses, all due and payable, which they had withheld from plaintiff in the course of his employment, defendants were willfully refusing to pay commissions and bonuses which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

79.    On or about December 15, 2007, when defendants failed and refused to pay to plaintiff his regular and continuing commissions, and bonuses, all due and payable, which they

had withheld from plaintiff in the course of his employment, defendants were willfully refusing to pay commissions and bonuses which plaintiff had earned pursuant to the employment agreement set forth above.  By doing so, the defendants willfully breached their agreement with the plaintiff.

80.    Since the date of plaintiff's termination, plaintiff has repeatedly requested that the defendants turn over and pay to him the compensation due and owing as described above. Defendants have ignored and rebuffed such requests.  On each occasion when defendants have done so, defendants have been in willful violation of the employment agreement set forth above.

81.    As the direct and proximate result of the defendants' knowing and willful violations of their employment agreement with him, plaintiff has suffered monetary losses in an amount in excess of $147,100.00, in addition to having to pay the expenses and costs of an action to recover what is rightfully his.

WHEREFORE, plaintiff, WILLIAM J. GROSS, requests the entry of judgment in his favor and against the defendants, ROBERT E. HOVEY, JR., JAMES F. DAVIS, II, DAVID J. BOTTNER, ROBERTO MONCADA, and RUSH HOUR EVENTS, LLC, jointly and severally, as follows:

A.    For an award of his commissions due and payable, in an amount in excess of ONE HUNDRED FORTY SEVEN THOUSAND ONE HUNDRED DOLLARS ($147,100.00), with statutory interest to accrue thereupon;

B.    For the assessment of 5% interest upon his commissions due and payable, calculated as of the date that said sums became due and payable;

C.    For prejudgment interest;

D.      For an award of his attorney's fees;

E.      For the costs of this proceeding.

### COUNT III
### (Slander and Defamation – James Davis )

1- 81.   The plaintiff re-alleges and adopts paragraphs 1- 81 of Count II as and for paragraphs 1 - 81 of Count III, as though fully set forth therein.

82.      On or about July 15, 2007, the defendant James F. Davis communicated slanderous statements to automobile dealer Dennis Tressler, pertaining to plaintiff's personal and professional integrity, capability, competence, and moral fitness, which were false, willful malicious and unprivileged.

83.      On or about August 9, 2007, Davis again communicated slanderous statements to automobile dealer Wil Vincent, pertaining to plaintiff's personal and professional integrity, capability, competence, and moral fitness, which were false, willful malicious and unprivileged.

84.      Davis knew that said statements were false when he made them.  Davis communicated said statements in order to deprecate and impugn the plaintiff, to alienate and disabuse a customer from his previous high opinion of the plaintiff, and to otherwise sully and despoil plaintiff's reputation and prospects in the business world.

85.      On information and belief, Davis's defamatory misconduct (which was slander per se) has done profound and lasting damage to plaintiff's reputation in a highly competitive field; has alienated numerous potential customers from doing business with the plaintiff; and has done irreparable damage to plaintiff's hard-won good will and professional prospects.

21

86.    As the proximate result of Davis's defamatory misconduct, plaintiff has suffered losses on information and belief in an amount exceeding $250,000.00.

87.    Due to the willful, malicious, and opportunistic nature of Davis's defamatory misconduct, an award of punitive damages is warranted, of considerable and exemplary extent, concomitant with the defendant's ability to pay.

WHEREFORE, plaintiff, WILLIAM J. GROSS, requests the entry of judgment in his favor and against the defendant, JAMES F. DAVIS, II, as follows:

A.    For an award of compensatory and intangible damages for the loss of plaintiff's reputation, good will, professional prospects, and present and future employment in an amount inn excess of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00);

B.    For an award of punitive damages;

C.    For the costs of this proceeding.

## COUNT IV
### (Slander and Defamation – James Davis – Respondeat Superior)

1- 87.    The plaintiff re-alleges and adopts paragraphs 1- 87 of Count III as and for paragraphs 1- 87 of Count IV, as though fully set forth therein.

88.    On or about July 15, 2007, when defendant Davis communicated slanderous statements about plaintiff to automobile dealer Dennis Tressler, Davis was committing acts in the scope of his employment and agency as a member of Rush Hour Events, LLC.

89.    On or about August 9, 2007, when defendant Davis communicated slanderous statements about plaintiff to automobile dealer Wil Vincent, Davis was committing acts in the scope of his employment and agency as a member of Rush Hour Events, LLC.

90.     The defendant Rush Hour Events, LLC is liable as principal for all defamatory misconduct and torts committed by its agents.

91.     Considering the willful and malicious nature of Davis's misconduct, an award of punitive damages against the principal Rush Hour Events, LLC, of considerable and exemplary extent, is warranted.

WHEREFORE, plaintiff, WILLIAM J. GROSS, requests the entry of judgment in his favor and against the defendant, RUSH HOUR EVENTS, LLC, as follows:

A.     For an award of compensatory and intangible damages for the loss of plaintiff's reputation, good will, professional prospects, and present and future employment in an amount inn excess of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00);

B.     For an award of punitive damages;

C.     For the costs of this proceeding.

### COUNT V
### (Slander and Defamation – Robert Hovey)

1- 91.   The plaintiff re-alleges and adopts paragraphs 1- 91 of Count IV as and for paragraphs 1- 91 of Count V, as though fully set forth therein.

92.     On or about May 9, 2008, the defendant Robert E. Hovey, Jr. communicated slanderous statements to automobile dealer Harry Kirch and Kenneth Ruhl, pertaining to plaintiff's personal and professional integrity, capability, competence, and moral fitness, which were false, willful malicious and unprivileged.

93.     Hovey knew that said statements were false when he made them.  Hovey communicated said statements in order to deprecate and impugn the plaintiff, to alienate and

disabuse a customer from his previous high opinion of the plaintiff, and to otherwise sully and despoil plaintiff's reputation and prospects in the business world.

94.     On information and belief, Hovey's defamatory misconduct (which was slander per se) has done profound and lasting damage to plaintiff's reputation in a highly competitive field; has alienated numerous potential customers from doing business with the plaintiff; and has done irreparable damage to plaintiff's hard-won good will and professional prospects.

95.     As the proximate result of Hovey's defamatory misconduct, plaintiff has suffered losses on information and belief in an amount exceeding $250,000.00.

96.     Due to the willful, malicious, and opportunistic nature of Hovey's defamatory misconduct, an award of punitive damages is warranted, of considerable and exemplary extent, concomitant with the defendant's ability to pay.

WHEREFORE, plaintiff, WILLIAM J. GROSS, requests the entry of judgment in his favor and against the defendant, ROBERT E. HOVEY, JR., as follows:

A.     For an award of compensatory and intangible damages for the loss of plaintiff's reputation, good will, professional prospects, and present and future employment in an amount inn excess of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($ 250,000.00);

B.     For an award of punitive damages;

C.     For the costs of this proceeding.

## COUNT VI
### (Slander and Defamation – Robert Hovey – Respondeat Superior)

1- 96.   The plaintiff re-alleges and adopts paragraphs 1- 96 of Count V as and for paragraphs 1- 96 of Count VI, as though fully set forth therein.

24

97.    On or about May 9, 2008, when defendant Hovey communicated slanderous statements about plaintiff to automobile dealer Harry Kirch and Kenneth Ruhl, Hovey was committing acts in the scope of his employment and agency as a member of Rush Hour Events, LLC.

98.    The defendant Rush Hour Events, LLC is liable as principal for all defamatory misconduct and torts committed by its agents.

99.    Considering the willful and malicious nature of Hovey's misconduct, an award of punitive damages against the principal Rush Hour Events, LLC, of considerable and exemplary extent, is warranted.

WHEREFORE, plaintiff, WILLIAM J. GROSS, requests the entry of judgment in his favor and against the defendant, RUSH HOUR EVENTS, LLC, as follows:

A.    For an award of compensatory and intangible damages for the loss of plaintiff's reputation, good will, professional prospects, and present and future employment in an amount inn excess of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00);

B,    For an award of punitive damages;

C.    For the costs of this proceeding.

Respectfully submitted,

**/s/ Richard S. Zachary**
Bar No. 6197914
Attorney for Plaintiff
180 North LaSalle, Suite 1925
Chicago, Illinois 60601
Phone: (312) 795-9003
Fax: (312) 795-9004
e-mail: RSZ@zacharylaw.net

25

08CV 3686
JUDGE KENDALL
MAGISTRATE JUDGE NOLAN
EDA

# RICHARD S. ZACHARY

ATTORNEY & COUNSELOR AT LAW

180 NORTH LASALLE STREET • SUITE 1925 • CHICAGO, ILLINOIS 60601
OFFICE: (312) 795-9003 • FAX: (312) 795-9004 • CELL: (312) 404-0785

**By Certified and Regular Mail**   EMAIL: RSZ@zacharylaw.net

June 23, 2008

RUSH HOUR EVENTS, LLC
162 North Franklin Street
Chicago, Illinois 60606

ATT:   Robert E. Hovey, Jr.
James F. Davis
David J. Bottner
Roberto Moncada

**Re:**   William Gross v. Rush Hour Events, LLC, et al.

Corporate Members, Owners and Officers:

Please be advised that I have been retained by William Gross, regarding his claim for compensation due and payable to him, which was earned by Mr. Gross during his employment and which has been unlawfully withheld by Rush Hour Events, LLC and its members, owners and officers.

Mr. Gross is owed commissions due and payable in excess of $119,000.00 as of the current date, which includes (i) his continuing commissions on the ongoing Super Sales at the dealerships which my client procured for Rush Hour Events, LLC as a source of business; and (ii) other unpaid commissions, totaling over $21,000.00, which were withheld, diverted, or deducted as purported "fines," or for other unlawful and improper purposes.

Pursuant to the Wage Payment and Collection Act, 820 ILCS 115/1 et seq., we hereby demand payment of Mr. Gross's compensation due and owing to him. **For the sole purpose of this Demand Letter**, and without prejudice to my client's right to seek full payment of any and all sums due and owing to him in a legal proceeding, we demand payment of $16,300.00 of the unpaid commissions due and owing to Mr. Gross by Rush Hour Events, LLC and its members and officers.

Please be advised that this Demand Letter has been sent to you pursuant to the requirements of the Wage Payment and Collection Act.   William Gross reserves his right to pursue full payment of any and all commissions that may be due and owing to him, in the event of a lawsuit, notwithstanding anything contained or set forth in this letter.

Sincerely,

Richard S. Zachary

EXHIBIT

A