## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WILLIAM J. GROSS,

     Plaintiff,

     v.

RUSH HOUR EVENTS, LLC, f/k/a RUSH
HOUR MARKETING, LLC; ROBERT E.
HOVEY, JR., individually and as member of
RUSH HOUR EVENTS, LLC; JAMES F.
DAVIS, II, individually and as member of
RUSH HOUR EVENTS, LLC; DAVID J.
BOTTNER, individually and as member of
RUSH HOUR EVENTS, LLC; and ROBERT
MONCADA, individually and as member of
RUSH HOUR EVENTS, LLC,

     Defendants.

No. 08 CV 3686

JUDGE KENDALL
MAGISTRATE JUDGE NOLAN

## ANSWER

NOW COME the Defendants, RUSH HOUR EVENTS, LLC, ROBERT E. HOVEY, JR.,

and JAMES F. DAVIS, II, by and through their attorneys, Law Offices of David L. Rudolph,

P.C., and for their answers to Plaintiff's Complaint, state as follows:

### Jurisdiction and Venue

1.    Admitted

2.    Admitted.

### Parties

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.      Admitted.

7.      Admitted.

8.      Defendants (hereinafter collectively referred to as "Rush Hour") lack sufficient information to admit or deny the allegations contained in Paragraph 8, and therefore demand strict proof thereof.

## ALLEGATIONS COMMON TO ALL COUNTS

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Denied. Rush Hour specifically asserts that its salespersons, including Plaintiff William J. Gross (hereinafter "Gross"), are independent contractors and not employees.

14.     Denied. Rush Hour specifically asserts that pursuant to terms of the written independent contractor agreement, its salespersons, including Gross, were authorized to work on the premises of Rush Hour or such other place the salesperson is able to conduct business.

15.     Admitted.

16.     Rush Hour specifically asserts that there was no tax withholding for its independent contractors, including Gross. Rush Hour admits the remaining allegations contained in Paragraph 16.

17.     Denied. Rush Hour specifically asserts that pursuant to terms of the written independent contractor agreement, its salespersons, including Gross, provide their own direction about how the work is to be done, and that Rush Hour only hired for the work to be done.

18.     Rush Hour asserts that Gross was engaged as an independent contractor at the end of July 2006 and executed an independent contractor agreement on or about August 10, 2006. Rush Hour further asserts that the initial negotiated commission for subsequent Staffed Sales Events was 5%. Rush Hour further asserts that Gross was not entitled to any commission unless he provided sales support throughout the entire event process. Rush Hour denies that Gross was entitled to an annual bonus. Rush Hour admits the remaining allegations contained in Paragraph 18.

19.     Denied. Rush Hour specifically asserts that the written independent contractor agreement states that Gross is not entitled to a commission for merely procuring a car dealership as a customer. Rather, Gross' entitlement to any commissions was contingent upon him providing sales support throughout the entire event process. Rush Hour further asserts that Gross failed to provide the necessary sales support for the Staffed Sales Events, as Gross was either absent or would disappear for weeks at a time during the event process.

20.     Denied. Rush Hour asserts that Gross was engaged as an independent contractor at the end of July 2006 and executed an independent contractor agreement on or about August 10, 2006.

21.     Denied.

22.     Rush Hour admits that Gross did procure several car dealerships as customers. Rush Hour denies the remaining allegations contained in Paragraph 22.

23.     Rush Hour admits that Gross did procure several car dealerships as customers and some of these customers signed up for subsequent Staffed Sales Events. Rush Hour denies the remaining allegations contained in Paragraph 23.

24.     Denied. Rush Hour specifically asserts that Gross' performance was unreliable as he would often disappear for hours, days and even months, was unreachable, and therefore failed to provide the required sales support throughout the entire event process. Rush Hour further asserts that when Gross was working, he would often exhibit erratic behavior, which on information and belief, was due to his abuse of alcohol, pills, illicit use of cocaine, heroin, or other drugs. Rush Hour further asserts that when Gross was confronted with concerns regarding his drug use, Gross would often become belligerent, violent, slam doors, and swear loudly thereby disrupting the work environment and leading to complaints from Rush Hour's landlord.

25.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis.  Accordingly, and in exchange for Gross' promises to stay clean, Rush Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

26.     Denied.

27.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not

entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. Accordingly, and in exchange for Gross' promises to stay clean, Rush Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

28.    Denied, Rush Hour specifically asserts that during Gross several disappearances, other Rush Hour salespersons, as well as the individual defendants, were forced to provide the necessary sales support for the event. As a cover for his unexplained absences, but with the hope of Gross' imminent return, the individual defendants would present the customers with various excuses for Gross' short term absence. However, when it would become apparent that Gross' absence was not temporary, and in an effort to maintain Rush Hour's client goodwill, and to otherwise avoid appearing unstable in the eyes of its customers, the individual defendants had no choice but to finally explain that the Gross' absence was due to his apparent drug and alcohol abuse.

29.    Denied.

30.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the

influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. Accordingly, and in exchange for Gross' promises to stay clean, Rush Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

31.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. Accordingly, and in exchange for Gross' promises to stay clean, Rush Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

32.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well

being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. Accordingly, and in exchange for Gross' promises to stay clean, Rush Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

33.    Denied, Rush Hour specifically asserts that during Gross several disappearances, other Rush Hour salespersons, as well as the individual defendants, were forced to provide the necessary sales support for the event. As a cover for his unexplained absences, but with the hope of Gross' imminent return, the individual defendants would present the customers with various excuses for Gross' short term absence. However, when it would become apparent that Gross' absence was not temporary, and in an effort to maintain Rush Hour's client goodwill, and to otherwise avoid appearing unstable in the eyes of its customers, the individual defendants had no choice but to finally explain that the Gross' absence was due to his apparent drug and alcohol abuse.

34.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. Accordingly, and in exchange for Gross' promises to stay clean, Rush

Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

35.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis.  Accordingly, and in exchange for Gross' promises to stay clean, Rush Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

36.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event. On several occasions, Gross would "reappear" broke, homeless, desperate for work, and by his own admission, had been under the influence of drugs or alcohol. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis.  Accordingly, and in exchange for Gross' promises to stay clean, Rush

Hour would agree to put a portion of the unearned and voluntary commission payments "on ice" until Gross showed he could stay clean and sober.

37.    Denied, Rush Hour specifically asserts that during Gross several disappearances, other Rush Hour salespersons, as well as the individual defendants, were forced to provide the necessary sales support for the event. As a cover for his unexplained absences, but with the hope of Gross' imminent return, the individual defendants would present the customers with various excuses for Gross' short term absence. However, when it would become apparent that Gross' absence was not temporary, and in an effort to maintain Rush Hour's client goodwill, and to otherwise avoid appearing unstable in the eyes of its customers, the individual defendants had no choice but to finally explain that the Gross' absence was due to his apparent drug and alcohol abuse.

38.    Denied. Rush Hour denies that Gross was terminated on or about August 15, 2007, but that Gross "disappeared" on or about that date.

39.    Rush Hour denies that Gross was fired on or about August 15, 2007, but that Gross "disappeared" on or about that date.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Rush Hour denies that Gross was fired on or about August 15, 2007, but that Gross "disappeared" on or about that date. Rush Hour further asserts that Gross was not entitled to any commissions as he failed to provide sales support throughout the entire event process. Rush Hour admits the remaining allegations contained in Paragraph 43.

44.    Denied.

45.    Denied.

46.    Denied. Rush Hour specifically asserts that Gross "reappeared" on or about that date broke, homeless, and desperate for work, at which time Rush Hour allowed him to return to his sales position. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. As an incentive for Gross to stay clean and sober, Rush Hour agreed to pay Gross these unearned and voluntary commission payments on a weekly basis. Rush Hour denies the remaining allegations contained in Paragraph 46.

47.    Denied. Rush Hour specifically asserts that Gross "reappeared" on or about that date broke, homeless, and desperate for work, at which time Rush Hour allowed him to return to his sales position. Because the individual defendants were concerned for Gross' well being and cared for him as a person, they offered to voluntarily pay Gross certain unearned commissions if Gross was able to stay "clean," drug and alcohol free, and perform his sales job on a consistent basis. As an incentive for Gross to stay clean and sober, Rush Hour agreed to pay Gross these unearned and voluntary commission payments on a weekly basis. Rush Hour denies the remaining allegations contained in Paragraph 47.

48.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

49.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

50.     Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

51.     Denied.

52.     Rush Hour denies that Gross was fired on or about December 15, 2007, but that Gross "disappeared" on or about that date. Rush Hour further asserts that Gross was not entitled to certain commisions commissions as he failed to provide sales support throughout the entire event process. Rush Hour admits the remaining allegations contained in Paragraph 43.

53.     Rush Hour lacks sufficient information to admit or deny the allegations contained in Paragraph 53, and therefore demands strict proof thereof.

54.     Rush Hour lacks sufficient information to admit or deny the allegations contained in Paragraph 54, and therefore demand strict proof thereof.

55.     Rush Hour admits that during a phone call, Robert Hovey recommended that Kirch not do business with Gross, and further admits that Hovey disclosed his belief that Gross abuses alcohol and drugs. Rush Hour specifically asserts that Gross' current employer, Travis Roberts of Traffic Jam Events, told Hovey that he observed Gross using drugs in the bathroom. Rush Hour denies the remaining allegations contained in Paragraph 55.

56.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

57.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

58. Denied

## COUNT I
### (Illinois Wage Payment and Collection Act)

59- 68. Rush Hour makes no answer to the allegations contained in Paragraphs 59 through 68 of Count I of the Complaint to the extent Rush Hour has simultaneously filed a Motion to Dismiss Count I of Plaintiff's Complaint.

## COUNT II
### (Breach of Contract)

1 – 68. Rush Hour reasserts its Answers to Paragraphs 1-58 as though fully set-forth herein.

69.    Rush Hour asserts that Gross was engaged as an independent contractor at the end of July 2006, and executed an independent contractor agreement on or about August 10, 2006. Rush Hour further asserts that the initial negotiated commission for subsequent Staffed Sales Events was 5%. Rush Hour further asserts that Gross was not entitled to any commission unless he provided sales support throughout the entire event process. Rush Hour denies that Gross was

entitled to an annual bonus. Rush Hour admits the remaining allegations contained in Paragraph 69.

70.    Rush Hour asserts that Gross was engaged as an independent contractor at the end of July 2006, and executed an independent contractor agreement on or about August 10, 2006. Rush Hour further asserts that the initial negotiated commission for subsequent Staffed Sales Events was 5%. Rush Hour further asserts that Gross was not entitled to any commission unless he provided sales support throughout the entire event process. Rush Hour denies that Gross was entitled to an annual bonus. Rush Hour admits the remaining allegations contained in Paragraph 70.

71.    Denied. Rush Hour specifically asserts that Gross' performance was unreliable as he would often disappear for hours, days and even months, was unreachable, and therefore failed to provide the required sales support throughout the entire event process. Rush Hour further asserts that when Gross was working, he would often exhibit erratic behavior, which on information and belief, was due to his abuse of alcohol, pills, illicit use of cocaine, heroin, or other drugs. Rush Hour further asserts that when Gross was confronted with concerns regarding his drug use, Gross would often become belligerent, violent, slam doors and swear loudly thereby disrupting the work environment and leading to complaints from Rush Hour's landlord.

72.    Denied.

73.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

74.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

75.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

76.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

77.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

78.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

79.    Denied. Rush Hour specifically asserts that due to Gross' pattern of extended disappearances without contact or communication, Gross failed to provide sales support

throughout the entire event process, and therefore, per the contractual agreement, Gross was not entitled to any commission for the relevant sales event.

80.     Denied.

81.     Denied.

WHEREFORE, the Defendants, RUSH HOUR EVENTS, LLC hereby prays that the Court enter an order: a) granting judgment in its favor and against Plaintiff; b) dismissing the claims against Rush Hour with prejudice; and c) awarding Rush Hour its costs in connection with this matter, together with any other relief that the Court deems just and proper under the circumstances.

## COUNT III
### (Slander and Defamation – James Davis)

1 – 81. Rush Hour reasserts its Answers to Paragraphs 1-81 as though fully set-forth herein.

82.     Denied, Rush Hour specifically asserts that during Gross several disappearances, other Rush Hour salespersons, as well as the individual defendants, were forced to provide the necessary sales support for the event. As a cover for his unexplained absences, but with the hope of Gross' imminent return, the individual defendants would present the customers with various excuses for Gross' short term absence. However, when it would become apparent that Gross' absence was not temporary, and in an effort to maintain Rush Hour's client goodwill, and to otherwise avoid appearing unstable in the eyes of its customers, the individual defendants had no choice but to finally explain that the Gross' absence was due to his apparent drug and alcohol abuse. Rush Hour further asserts that any statements regarding Gross drug and alcohol abuse were true.

83.     Denied, Rush Hour specifically asserts that during Gross several disappearances, other Rush Hour salespersons, as well as the individual defendants, were forced to provide the necessary sales support for the event. As a cover for his unexplained absences, but with the hope of Gross' imminent return, the individual defendants would present the customers with various excuses for Gross' short term absence. However, when it would become apparent that Gross' absence was not temporary, and in an effort to maintain Rush Hour's client goodwill, and to otherwise avoid appearing unstable in the eyes of its customers, the individual defendants had no choice but to finally explain that the Gross' absence was due to his apparent drug and alcohol abuse. Rush Hour further asserts that any statements regarding Gross drug and alcohol abuse were true.

84.     Denied.

85.     Rush Hour denies that Defendant Davis engaged in any defamatory misconduct. Rush Hour lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 85, and therefore demand strict proof thereof.

86.     Rush Hour lacks sufficient information to admit or deny the allegations contained in Paragraph 86, and therefore demand strict proof thereof.

87.     Denied.

WHEREFORE, the Defendant JAMES F. DAVIS, II hereby prays that the Court enter an order: a) granting judgment in their favor and against Plaintiff; b) dismissing the claims against Defendant with prejudice; and c) awarding Defendant his costs in connection with this matter, together with any other relief that the Court deems just and proper under the circumstances.

## COUNT IV
### (Slander and Defamation – James Davis – Respondent Superior)

1- 87. Rush Hour reasserts its Answers to Paragraphs 1-87 as though fully set-forth herein.

88.    Denied,

89.    Denied.

90.    Denied.

91.    Denied.

WHEREFORE, the Defendants, RUSH HOUR EVENTS, LLC hereby prays that the Court enter an order: a) granting judgment in its favor and against Plaintiff; b) dismissing the claims against Rush Hour with prejudice; and c) awarding Rush Hour its costs in connection with this matter, together with any other relief that the Court deems just and proper under the circumstances.

## COUNT V
### (Slander and Defamation – Robert Hovey)

1 – 91. Rush Hour reasserts its Answers to Paragraphs 1-91 as though fully set-forth herein.

92.    Rush Hour admits that during a phone call, Robert Hovey recommended that Kirch not do business with Gross, and further admits that Hovey disclosed his belief that Gross abuses alcohol and drugs. Rush Hour further asserts that any statements regarding Gross drug and alcohol abuse were true. Rush Hour denies the remaining allegations contained in Paragraph 92.

93.    Denied.

94.    Rush Hour denies that Defendant Hovey engaged in any defamatory misconduct. Rush Hour lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 94, and therefore demand strict proof thereof.

95.    Denied.

96.    Denied.

WHEREFORE, the Defendant ROBERT HOVEY hereby prays that the Court enter an order: a) granting judgment in their favor and against Plaintiff; b) dismissing the claims against Defendant with prejudice; and c) awarding Defendant his costs in connection with this matter, together with any other relief that the Court deems just and proper under the circumstances.

**COUNT VI**
**(Slander and Defamation – Robert Hovey – Respondent Superior)**

96. Rush Hour reasserts its Answers to Paragraphs 1-96 as though fully set-forth herein.

97.    Denied,

98.    Denied.

99.    Denied.

WHEREFORE, the Defendants, RUSH HOUR EVENTS, LLC hereby prays that the Court enter an order: a) granting judgment in its favor and against Plaintiff; b) dismissing the claims against Rush Hour with prejudice; and c) awarding Rush Hour its costs in connection with this matter, together with any other relief that the Court deems just and proper under the circumstances.

**Affirmative Defense- Set-Off**

1. In addition to making a profit, Defendants Hovey and Davis take great personal and

job satisfaction from providing steady work and life opportunities to persons recovering from drug and alcohol abuse.

2. When Plaintiff Gross was hired by Rush Hour, Defendants Hovey and Davis were aware of his history of alcohol and illicit drug abuse. However, Gross expressed a desire to be clean and sober, and Rush Hour wanted to provide him with an opportunity to turn his life around.

3. In fact, for over a month, Defendant Davis opened his home to Gross, provided him with food, shelter and direction in order to help Gross stay clean, and build a foundation for recovery. Davis never expected reimbursement for the monetary support during these several weeks.

4. Defendants Davis and Hovey took Gross on a recovery based retreat, as well as several recovery meetings with the hope that it would provide Gross with a new attitude towards his life.

5. At Gross' request, Hovey agreed to hold commission checks on several occasions as Gross was concerned he would spend it on drugs.

6. However, throughout 2006 and 2007, Rush Hour paid significant expenses and bills for Gross, with the understanding and acknowledgment by Gross that he would reimburse Rush Hour once he started earning commissions.

7. Rush Hour placed no deadline on the repayment, and did not charge any amount of interest, but once again, the individual Defendants cared for Gross as a person, and were hopeful he would stay sober.

8. These expenses included paying for Gross' monthly rent and housing to several private landlords and social service agencies.

9. These expenses included paying a dentist, Dr. Gregory F. Strobel, $6,228 for dentures

for Gross.

10. These expenses included paying several delinquent cell phone bills to T-Mobile in order to reestablish phone service for Gross, as well as other expenses such as food, cigarettes and bus passes.

11. Accordingly, were not maliciously withholding commissions due Gross, but were instead reimbursing Rush Hour for these expenses, as acknowledged and agreed to by Gross.

WHEREFORE, the Defendants, RUSH HOUR EVENTS, LLC hereby prays that the Court enter an order: a) granting judgment in its favor and against Plaintiff; b) dismissing the claims against Rush Hour with prejudice; and c) awarding Rush Hour its costs in connection with this matter, together with any other relief that the Court deems just and proper under the circumstances.

Respectfully Submitted,

Attorney for Defendants,
RUSH HOUR EVENTS, LLC, ROBERT E.
HOVEY, JR. and JAMES F. DAVIS,

David L. Rudolph
Law Offices of David L. Rudolph
111 W. Washington, St., Suite 823
Chicago, IL 60602
Tel: (312) 236-8808
Fax: (312) 276-8513
Atty No. 39308